CROMBEZ *v.* LIOGRE.

1. APPEAL AND ERROR—EXTENDING TIME TO PERFECT APPEAL.

Where, within 20 days after entry of decree, claim of appeal was filed, fee paid, and transcript of stenographer's minutes procured, an order extending time 60 days further in which to perfect appeal was properly signed by trial court (Circuit Court Rule No. 66).

2. MORTGAGES—DEED AS MORTGAGE—ACCOUNTING.

In suit to have deed absolute on its face declared to be mortgage, and for other relief, decree of court below holding deed to be mortgage and directing defendants to account for rents, income, and profits, and providing for reimbursement of defendants to amount expended by them in improving the property, and also compensating them for their services in connection therewith, *held,* sustained by the evidence.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted January 23, 1930. (Docket No. 115, Calendar No. 34,614.) Decided March 6, 1930.

Bill by Jules Crombez and another against Paul Liogre and another and Henry Stark and others to set aside a warranty deed, for an accounting, and other relief. From a decree declaring the deed a mortgage, defendants Stark and others appeal. Affirmed.

*Joseph B. Beckenstein* (*John Sklar,* of counsel), for appellants.

*Lawrence D. Larke* and *Arthur J. Adams,* for appellees.

POTTER, J. November 1, 1928, plaintiffs filed a bill of complaint, later amended, against defendants for

an accounting with defendants Henry Stark and Flora Stark, his wife, Andrew Bentley and Dorothy A. Bentley, his wife, to set aside a warranty deed from plaintiffs to defendant Henry Stark, and a deed from Henry Stark and Flora Stark, his wife, to Andrew Bentley and Dorothy Alice Bentley, his wife; for a conveyance from defendants Paul Liogre and wife, to compel delivery by defendants Stark and Bentley to plaintiffs of a quitclaim deed from Paul Liogre and Adrienne Liogre, his wife, held by defendants Stark and Bentley; and to declare a deed executed by plaintiffs to defendant Henry Stark to be a mortgage. There was decree for plaintiffs and defendants appeal.

A motion to dismiss defendants' appeal was filed by plaintiffs December 31, 1929, because more than 20 days had elapsed before a second order by the circuit court extending the time 60 days in which to perfect the appeal was procured, and the trial court it is claimed thereby lost jurisdiction to extend the time. It appears the claim of appeal was filed, the fee paid, and a transcript of the stenographer's minutes procured within 20 days after entry of the decree sought to be appealed from. An order extending the time 60 days further was presented to the trial court within 20 days after decree below. The trial court refused to sign the order. Had defendants brought mandamus this court probably would have issued an order directing the trial court to sign the order (Circuit Court Rule No. 66). Before this was done the trial court signed the order and the entire record is here. Plaintiffs' motion, under the facts, will be overruled, and the case disposed of on the merits.

Plaintiffs were the owners of property in Detroit described in the bill of complaint. On this property,

was a combined store and office building. Defendants Henry Stark and Paul Bentley had their offices therein. Plaintiff and wife are of Belgian descent and not well versed in the use of English and unable to readily read that language. Plaintiffs resided on a farm near Utica, where Mr. Crombez was engaged in the gravel business. He did not give as careful and forceful attention to his Detroit property and the collection of the rents from tenants as he should have done. There was a mortgage on the Detroit real estate of $24,000 and a second mortgage of $12,000. Some of his tenants were in default and some of the stores in the building vacant. The building was not being well maintained. The $24,000 mortgage was about to be foreclosed. Plaintiff was unable to refinance the property, and the buildings were out of repair. Plaintiffs claim that, at the defendant Henry Stark's suggestion, after Stark had attempted to assist plaintiff Jules Crombez in securing a loan and was unable to do so, they deeded the property to Henry Stark to enable him to superintend the repairs to be made thereto and remortgage the premises; that subsequently, the defendant Henry Stark and wife deeded to the defendants Bentley and wife an interest in the property; that the defendant Henry Stark went on and supervised the repair of the building; the defendants Stark and Bentley advancing substantial sums of money to pay for labor and materials; that the plaintiff Jules Crombez did the excavating under the building, furnished the sand and gravel and some other material, and worked on the building until its completion. It is the plaintiffs' claim the deed to defendant Henry Stark was given as security merely, and by Stark it was an absolute conveyance

made because plaintiff could not refinance, and in consideration of the defendant Stark agreeing to protect plaintiffs from a deficiency decree on the foreclosure of the mortgage on the premises. The testimony of the parties is in direct conflict. The defendant Henry Stark made an application, in writing, for a loan to the Guardian Trust Company dated June 25, 1928, in which he represented the plaintiff Jules Crombez was the owner of the premises, and that the buildings thereon were worth $41,930, the land $51,200, and the garage thereon $1,200, a total of $94,330 in all. One Ross Henderson appraised this property for the trust company and found the building to be worth $39,746, and the value of the land and building $80,321, and recommended to the trust company a loan thereon of $40,000. Dr. Nathan, who held a second mortgage on the premises, offered $69,000 for the property. George A. Oralman, a real estate appraiser with 17 years' experience in Detroit, appraised the building at $33,032 and the land $51,350. There were appraisals of the property, one by Mr. Munro of $65,000, in 1925, and one by Mr. Keyes, in 1925, of $54,000. The defendant Henry Stark himself placed the present value of the property at $80,000, the land at $39,000 and the building at $41,000. The testimony shows that after the deed from the plaintiffs to Stark was made, Stark discovered, in attempting to finance the property, there existed a quitclaim deed from plaintiffs to the defendant Paul Liogre. It is admitted this quitclaim deed was given as security, and it was sought to release this cloud upon the title. The consideration paid to Liogre for the quitclaim deed, which was procured by the defendant Henry Stark, was paid jointly by the plaintiff and

by the defendant Henry Stark, and the deed from Liogre and wife was taken in Jules Crombez' name and delivered to the defendant Henry Stark.

The defendant Henry Stark, accompanied by his attorney, went to plaintiffs' home near Utica at night and procured the deed in dispute. The plaintiffs claim this deed was given in pursuance of a previous understanding, in accordance with the plaintiffs' claim. One Vandierdonck represented the defendant Paul Liogre at the time the plaintiff Jules Crombez and the defendant Henry Stark were seeking to get a quitclaim deed, and it is Vandierdonck's testimony that the defendant Henry Stark told him he was going to look after the remodeling of the building when he would be able to get a mortgage placed on the property which would take care of the existing incumbrances and the repairs so everyone would get their money. This testimony is corroborated by other witnesses.

It is conceded that Dr. Stark was on the job a greater part of the time; that both he and plaintiff Jules Crombez put in long hours in repairing and remodeling the building; that about the time the building was completed a settlement was sought, and that, at that time, Dr. Stark stated what he wanted to get out of the property was the money he and the defendant Andrew Bentley had invested therein, together with compensation for their services.

The trial court's decree holding the deed in question to be a mortgage, is sustained by ample evidence, and, we think, protects the rights of defendants Bentley and Stark, who are directed to be repaid for the money found to be due to them, together with interest thereon, and $3,000 as compensation for their services. It further directs the defendants

Stark and Bentley, who have possession of the premises, to account to plaintiffs for the rents, incomes, and profits. We think this substantially correct, and the decree of the trial court is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, SHARPE, FEAD, and NORTH, JJ., concurred. McDONALD, J., did not sit.